**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

**CHRISTIAN HILL**                                                    **CIVIL ACTION: 24-626**

**VERSUS**                                                               **JURY TRIAL DEMANDED**

**SPICY DAUGX OPERATORS LOUISIANA, LLC,**
**BNR PRODUCTION PARTNERS, LLC,**
**XYZ INSURANCE COMPANY**

## COMPLAINT

Plaintiff Christian Hill brings this this suit against his former employer, Spicy Daugx Operators Louisiana, LLC, alleging violations of Title VII of the Civil Rights Act, the Fair Labor Standards Act, the Louisiana Constitution, the Louisiana Employment Discrimination Act, and Louisiana's Whistleblower Protection Law.

## I.      INTRODUCTION

1.      Plaintiff Christian Hill worked at Spicy Daugx Operators Louisiana, LLC, "Spicy Daugx," as a floor-hand.

2.      Mr. Hill, who was 19 years-old at the time of his employment, is a Black man and was the only Black employee on payroll.

3.      Throughout his employment, Mr. Hill's immediate supervisor, a white man, made harassing comments regarding Mr. Hill's race and referred to Mr. Hill using racial slurs.

4.      After Mr. Hill suffered an on-the-job injury caused by the negligence of this supervisor, the supervisor directed Mr. Hill to go hom and replaced Mr. Hill with a white employee.

5.      Additionally, when Mr. Hill felt ready to return to work, the supervisor instructed a white employee, who gave Mr. Hill rides to work, to not pick Mr. Hill up for work.

6.      The supervisor then called Mr. Hill racial slurs, including the N-word, over text message and attempted to incite a fight. For example, the supervisor wrote:

7.      Mr. Hill reported his supervisor's conduct and the contents of the text messages to the head manager.

8.      Later that same day, Spicy Daugx fired Mr. Hill.

9.      Spicy Daugx did not provide Mr. Hill with any termination paperwork.

10.     A single incident of racial harassment of sufficient intensity, like the use of the n-word, is sufficient to prove a hostile work environment claim. *Henry v. Corpcar Servs. Hous., Ltd.*, 625 F. App'x 607, 617 (5th Cir. 2015). Here, there are a range of incidents, plus retaliation.

## II.      JURISDICTION AND VENUE

11.     This Court has jurisdiction over Plaintiff's claims of Title VII and Fair Labor Standards Act violations pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).  This Court has jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. § 1367.

12.      The venue is proper in the Western District of Louisiana under 28 U.S.C. §1391(b)(2). The events giving rise to the claim occurred in the Western District of Louisiana.

13.     Mr. Hill has exhausted all administrative remedies by filing a charge with the Equal Employment Opportunity Commission on June 28, 2023. The EEOC issued a Right to Sue letter on May 3, 2024.

## III.     PARTIES

14.      Plaintiff Christian Hill is a person of the full age of majority maintaining a residence in the Western District of Louisiana. He worked for Spicy Daugx Operators Louisiana, LLC, one segment of the BNR Production Partners, LLC integrated enterprise.

15.     Defendant Spicy Daugx Operators Louisiana, LLC is a Louisiana licensed Limited Liability Company, Charter No. 42412715K. Its principal place of business and headquarters are in Alexandria, LA. It is a part of the BNR Production Partners enterprise.

16.     <u>Defendant BNR Production Partners, LLC</u> is a non-Louisiana Limited Liability Company authorized to do business in Louisiana, Charter No. 45631017Q. Its principal place of business and headquarters is in Wilmington, Delaware. Its principal business establishment and registered office in Louisiana is in Belcher, Louisiana.

17.     Made Defendant herein is <u>XYZ Insurance Company</u>, which, upon information and belief, is the insurer providing coverage to Defendants for acts or omissions of officers and directors like the above-named Defendants.

## IV.     FACTS

18.     For approximately three months, from March 14, 2023 to May 19, 2023, Mr. Hill worked for Spicy Daugx Operators Louisiana, LLC.

19.     Spicy Daugx employed Mr. Hill as a floor-hand and paid Mr. Hill an hourly rate of $15.00 per hour.

20.     Mr. Hill heard about the job through his friend, Jacob Stevens, who is white.

21.     When a position opened within Mr. Stevens' work crew at Spicy Daugx, Mr. Stevens asked Spicy Daugx to employ his friend, Mr. Hill.

22.     Mr. Stevens did not indicate that Mr. Hill was Black prior to Mr. Hill joining the work crew.

23.      At the time, Mr. Stevens and Mr. Hill were both 19-years old.

24.     All other employees on payroll were around 30-50 years-old and all were white men, except for Mr. Hill.

25.     Mr. Stevens was paid an hourly rate of $16.00.

26.     Mr. Hill and Mr. Stevens each worked 5 or 6 days per week, from 6:00 a.m. to 6:00 p.m. (12 hours per day) or until 4 p.m. if they got off early (10 hours).

27.     Mr. Hill did not own a vehicle so Mr. Stevens gave him a ride to work each day.

28.     The work crew that Mr. Hill and Mr. Stevens were on was supervised by Operator Dakota Blizzard.

29.     After Mr. Hill was hired, Mr. Blizzard made daily derogatory comments about Mr. Hill, referencing his race and using racial slurs, in the presence of Mr. Stevens and other white employees under his supervision.

30.     Most frequently these remarks referenced Mr. Hill's work ethic and stereotypes about African Americans, such as "[Christian's] working like a n*****."

31.     On Wednesday, May 17, 2023, Mr. Hill suffered an injury to his shoulder due to Mr. Blizzard's failure to supervise operation of a rig by Mr. Stevens.

32.     Although Mr. Stevens was not licensed to operate the rig, Mr. Blizzard offered for him to train on it under his supervision.

33.     However, when Mr. Stevens requested help operating the rig, Mr. Blizzard ignored him and simply laughed and continued joking.

34.     Mr. Blizzard was high from smoking marijuana on the job.

35.     During this time, the work crew was pulling tubing.

36.     Mr. Blizzard did not tell Mr. Stevens how to catch the tubing, and a whole string of tubing came down, striking Mr. Hill on the shoulder.

37.     Mr. Blizzard then told Mr. Hill to go home.

38.     The next morning, Thursday, May 18, 2023, Mr. Hill was in pain and notified Mr. Blizzard that he agreed with Mr. Blizzard's advice to remain home for the day to recover.

39.     During this time, Mr. Stevens was at work with Mr. Blizzard.

40.     Mr. Blizzard replaced Mr. Hill on the crew with a white man, Dakota Boles.

41.     Mr. Stevens also observed Mr. Blizzard receiving text messages from Mr. Hill and not responding to them.

4

42.     Mr. Blizzard told Mr. Stevens not to give Mr. Hill rides to work anymore and that he intended to fire Mr. Hill without telling Mr. Hill that he was fired.

43.     Mr. Blizzard expressed to Mr. Stevens that he wanted it to appear that Mr. Hill had not shown up for work.

44.     Mr. Stevens confirmed for Mr. Hill that Mr. Blizzard had received the messages, and informed Mr. Hill about Mr. Blizzard's demand that he not pick up Mr. Hill for work.

45.     On Friday, May 19, 2023, Mr. Hill contacted Mr. Blizzard to discuss this alleged refusal to allow Mr. Hill to return to work.

46.     Mr. Blizzard responded by threatening Mr. Hill and calling him a racial slur:



47.     After receiving these messages, Mr. Hill went to the main office to see the head manager, "Scooby."

48.     Mr. Hill went to the job site to ask the manager of the site if he was fired, the reason for his termination, and to report Mr. Blizzard's conduct.

49.     When Mr. Hill arrived on the site, he saw Mr. Blizzard, but did not approach him or speak to him.

50.     Mr. Hill explained to the manager that Mr. Blizzard's use of marijuana while supervising the operation of heavy machinery caused his injury.

51.     Mr. Hill showed the manager the text messages from Mr. Blizzard, including Mr. Blizzard's use of racial slurs and Mr. Blizzard's demand that Mr. Hill physically fight him.

52.     In response, the manager told Mr. Hill not to worry about the text messages and that he would assign Mr. Hill to a different work crew.

53.     The manager asked Mr. Hill to return home to get a shirt since Mr. Hill had forgotten to bring one with him.

54.     Employees on Mr. Hill's work crew typically work shirtless, especially during the summer.

55.     Mr. Hill returned with the shirt and he and Mr. Stevens joined the other work crew.

56.     Before joining the new work crew, Mr. Hill asked to retrieve his work boots from Mr. Blizzard's truck.

57.     Mr. Blizzard allowed Mr. Hill to get the boots from the truck.

58.     Mr. Hill and Mr. Stevens were with that crew for approximately two hours when they were informed by Jackie, a rig-pusher in an intermediate position between Mr. Blizzard and Scooby, that they were fired.

59.     Jackie told them, "it's up to the higher ups."

60.     Neither Mr. Hill nor Mr. Stevens were given any termination paperwork.

61.     When Mr. Stevens and Mr. Hill returned to the office to collect their final paychecks, they discovered that Mr. Stevens' timecard had been destroyed.

62.     Spicy Daugx used Mr. Hill's time card to estimate the hours that Mr. Stevens had worked.

63.     Employees working at Spicy Daugx would clock-in and clock-out using paper timecards.

64.     Mr. Hill routinely worked 45-60 hours per week.

65.     Mr. Hill worked 5 or 6 days per week, from approximately 6:00 a.m. to 6:00 p.m. (12 hours per day) or until 4:00 p.m. if they got off early (10 hours).

66.     However, Spicy Daugx only occasionally paid Mr. Hill overtime for some of the hours that they worked over 40 hours.

67.     The FLSA requires that workers be paid time-and-a-half for hours worked in excess of 40 hours per week, unless they meet three criteria: (1) the employee must be paid a predetermined and fixed salary that is not subject to reduction because of variations in the quality or quantity of work; (2) the amount of salary paid must meet a minimum specified amount (currently $35,568); and (3) the employee's job duties must primarily involve executive, administrative, or professional duties as defined by the regulations.[1]

68.     Mr. Hill does not fall within any exemption of the FLSA.

69.     Spicy Daugx has approximately 25 or more employees at subject work site; and approximately 50 employees at other oil production sites in Louisiana.

70.     On June 28, 2023, Mr. Hill filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

---

[1] Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 FR 51230 (09/27/2019)

71.     On that date of filing, Mr. Blizzard was still employed by Spicy Daugx.

72.     On June 29, 2023, the day after the Charge was filed, Mr. Blizzard sent Mr. Hill the message below:



73. Around the same time as Mr. Blizzard sent this message, he also called and harassed Mr. Hill's brother.

74.     On May 3, 2024, the EEOC issued Mr. Hill a Right to Sue letter.

## V.     CAUSES OF ACTION

### *Count 1*: Violation of the FLSA

75.     At all times hereinafter mentioned, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

76.     At all times hereinafter mentioned, Defendants have been enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

77.     At all times hereinafter mentioned, Defendants have been enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises have and have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by  any person and in that said enterprises have had and have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are

separately stated).

78.     At all times hereinafter mentioned, Plaintiff was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.23.

79.     Defendants' managers and officers directed the means and manner in which Plaintiff was compensated.  During the relevant time period, Defendants violated the provisions of Sections 6 and/or 7 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2), by employing employees engaged in commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees minimum wages and/or for their employment in excess of 40 hours per week at rates no less than one and one-half the regular rates for which they were employed.

80.     Defendants' failure to properly pay Mr. Hill was done so knowingly, willfully or in reckless disregard in carrying out its illegal pattern or practice. The decision by Defendants not to properly pay minimum and/or overtime compensation to its hourly employees was neither reasonable, nor in good faith. Accordingly, Plaintiff is entitled to wages under the FLSA in an amount equal to one and one-half times their rate of pay, plus liquidated damages, attorney's fees and costs.

81.     Plaintiff does not fall within any exemption of the FLSA and was required to be paid according to the dictates of that section.

### *Count 2*: Conversion and Misappropriation

82.     Plaintiff incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

83.     Defendants' actions in withholding monies from employee paychecks, which said employees were owed, amounts to their conversion of funds under Louisiana law.  See La. Civ. Code art. 2315.

**Count 3: Failure to Pay Wages Under LA. R.S. 23:621 *ET. SEQ.***

84.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

85.     Upon termination of Mr. Hill's employment, Defendants have not paid all past due earned wages to Mr. Hill.

86.     Defendants' refusal to remit all of an employee's overdue wages within fifteen (15) days of termination of their employment is a violation of Louisiana law.  This remedy is in addition to those provided for by the minimum and overtime wages under the FLSA.

87.     On June 28, 2023, Plaintiff's counsel sent Spicy Daugx's counsel an amicable demand letter explaining that Spicy Daugx had failed to consistently pay Mr. Hill overtime. During the course of his employment, Mr. Hill routinely worked 45-60 hours per week. However, Spicy Daugx only paid Mr. Hill overtime for some of those hours.

88.     Defendants refuse to provide any moneys in response to the amicable demand letter, thereby constituting a specific violation of the Louisiana Wage Payment Act.

89.     This petition serves as a second amicable demand for D'Argent to remit all due wages to those who's employment has been terminated.  Failure to pay said wages results in penalties, calculated at the employees properly calculated rate of pay, costs, and attorneys' fees pursuant to La. R.S. 23:632.

**Count 4: Violation of Title VII of the Civil Rights Act – Racially Hostile Work Environment**

90.     A hostile work environment is one which is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so" taking into account such factors as frequency, severity, and whether it interferes with the employee's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); see also *Alcorn v. City of Baton Rouge*, 898 So.2d 385 (La. 2004).

91.     In a published decision, the Fifth Circuit recently joined other circuits in recognizing that "[p]erhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as [the N-word] by a supervisor in the presence of his subordinates." *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (quoted sources omitted).[2]

92.     The N-word has been further described as "a term that sums up . . . all the bitter years of insult and struggle in America, [a] pure anathema to African-Americans, [and] probably the most offensive word in English." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577, 404 U.S. App. D.C. 291 (D.C. Cir. 2013) (Kavanaugh, J., concurring) (citations omitted).

93.     Mr. Hill was subjected to repeated racial slurs by his white supervisor, verbally and over text messages.

94.     This supervisor made racially derogatory comments and used racial slurs to refer to Mr. Hill daily in front of other employees.

95.     When Mr. Hill reported the supervisor's conduct to the head manager, the manager was dismissive and briefly transferred Mr. Hill to a different work crew before firing him.

***Count 5:* Violation of Title VII of the Civil Rights Act – Discrimination Based on Race**

96.     Plaintiff realleges and incorporates each and every foregoing paragraph.

97.     Title VII of the Civil Rights Act bars racial discrimination in the workplace. Civil Rights Act of 1964, § 701 *et seq*., as amended, 42 U.S.C.A. § 2000e *et seq.*

---

[2] See also, *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)); *Alston v. Town of Brookline*, 997 F.3d 23, 47 (1st Cir. 2021); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015); *Ellis v. Houston*, 742 F.3d 307, 325-26 (8th Cir. 2014); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014); *McGinest v. GTE Serv.,* 360 F.3d 1103, 1116 (9th Cir. 2004).

98.     It is unlawful for an employer "to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex, or national origin." 42 U.S. Code § 2000e–2; see also, *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488 (M.D. La. 2003).

99.     Although direct evidence of racial discrimination is often difficult to find, Mr. Hill's supervisor Mr. Blizzard responded "Petty a\*\* n\*\*\*\*\* s\*\*\*" and attempted to incite a physical altercation when Mr. Hill stated that he would report Mr. Blizzard's conduct to the main office.

100.    Mr. Hill showed these text messages to the manager on site at the main office.

101.    Spicy Daugx then transferred and terminated Mr. Hill as a result of his speaking up about the harassment.

102.    Mr. Blizzard's statement highlights race as the motivating factor behind the adverse employment and confirms that the transfer and termination were unlawful acts based on Mr. Hill's race.

103.    Spicy Daugx's actions have caused Ms. Whatley to suffer mental, emotional, physical, and psychological harm.

104.    Mr. Hill suffered a loss of present and future wages, employment benefits, and future career opportunities as a result of Spicy Daugx's unlawful conduct.

105.    On June 28, 2023, Mr. Hill filed a charge with the Equal Employment Opportunity Commission on June 28, 2023.

106.    On May 3, 2024, the EEOC issued a Right to Sue letter.

### *Count 6:* Retaliation in Violation of Title VII of the Civil Rights Act

107.    Plaintiff realleges and incorporates each and every foregoing paragraph.

108.    Title VII of the Civil Rights Act also protects employees who suffer an adverse employment action because they engaged in a protected activity. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).

109.    Many activities are considered "protected" under Title VII, including but not limited to reporting or opposing harassment. *Carter v. Town of Benton*, 827 F.Supp.2d 700 (W.D. La. 2010).

110.    Here, Mr. Hill reported the harassment and discrimination to the manager on site, who responded in a dismissive manner, transferred Mr. Hill to a different work crew, and then terminated Mr. Hill's employment.

### *Count 7:* Louisiana Employment Discrimination Law

111.    Plaintiff realleges and incorporate each and every foregoing paragraph.

112.    La. R.S. 23:332(A)(1) makes it unlawful to discriminate against any individual in employment based on their race.

113.    The Louisiana anti-discrimination law shares a similar scope and applicability to its federal counterparts plead herein. *White v. Golden*, 982 So.2d 234, 243 (La. App. 2008).

114.    By the conduct alleged herein, Defendant subjected Mr. Hill to race discrimination in the form of a hostile work environment and retaliation in violation of the Louisiana Employment Discrimination Law.

### *Count 8:* Breach of Louisiana's Whistleblower Protection Law

115.    Louisiana law prohibits "reprisal" against any employee who "discloses or threatens to disclose a workplace act or practice that is in violation of state law" after "advising the employer of the violation of law." R.S. 23:967.

116.    Here, Mr. Hill disclosed workplace acts and practices that violated the Louisiana Employment Discrimination Law and constituted an Occupational Safety and Health Administration (OSHA) violation, and negligence.

117.   Mr. Hill was subject to reprisal and punishment for reporting those violations of law.

***Count 8*: State Law Direct Action Claim**
*Against XYZ Insurance Companies*

118.   Plaintiff incorporates and reasserts the allegations in each preceding and following paragraphs of this Complaint.

119.   Defendant XYZ Insurance Companies, upon information and belief, have issued and/or currently have in effect one or more policies of insurance covering Defendant named herein. For valuable consideration received, these policies obligated Defendant Insurance Companies, jointly and/or severally, to pay on behalf of their insured Defendant(s) any sums the insured Defendant(s) may become obligated to pay to Plaintiff or to indemnify their insured Defendant(s) for any sums the insured Defendant(s) may become obligated to pay to Plaintiff.

120.   By reason of their illegal and unconstitutional acts, Defendant is liable to Plaintiff for all damages and injuries he has suffered as a result. Upon information and belief, Defendant Insurance Companies are contractually obligated to pay these sums on behalf of the insured Defendant(s).

121.   Upon information and belief, Defendant Insurance Companies are liable to Plaintiff for any and all damages incurred by reason of the insured Defendant(s)' acts, up to their policy limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to assert claims of privilege or immunity from liability.

122.   Under Louisiana Revised Statute § 22:655(B), Plaintiff brings a direct action against Defendant Insurance Companies to recover any and all sums they are obligated to pay Plaintiff on behalf of their insureds or to indemnify their insureds.

## V.

## RELIEF REQUESTED

123.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the complaint.

124.    Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

A.  For a judgement against Defendants for all asserted causes of action;

B.  For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

C.  For an Order awarding Plaintiff unpaid benefits and compensation in connection with the FLSA violations;

D.  For a judgment awarding compensatory damages;

E.  For a judgment awarding special damages;

F.  For a judgement award Plaintiff his costs and attorney's fees

G.  For an Order awarding Plaintiff post-judgment interest at the highest rates allowed by law;

H.  All damages as called for in the FLSA;

I.  All relief as allowed under applicable Louisiana law, including late payment penalties and attorneys' fees pursuant La. R.S. 23:632, and all damages allowed by law related to Defendants' conversion, unjust enrichment, and attorneys' fees and costs where appropriate;

J.  Declaratory relief;

K.  Order such further relief, at law or in equity, to which Plaintiff may be entitled.

125.     Plaintiff states any and all other causes of action that may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this Court may seem equitable.

126.     Plaintiff reserves the right to notice of defect to this pleading and reserves the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.


                    Respectfully submitted,

                    */s/ Hope Phelps*
                    **HOPE PHELPS (La. Bar No. 37259)**
                    **WILLIAM MOST (La. Bar No. 36914)**
                    Most & Associates
                    201 St. Charles Ave., Ste. 2500, #9685
                    New Orleans, LA 70170
                    Tel: (504) 509-5023
                    Email: williammost@gmail.com

                    ***Counsel for Plaintiffs, Christian Hill***